UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| ROGER TRISTAN JOHNSON, )<br>    Petitioner, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>    Respondent. ) | Nos. 2:12-CR-85<br>       2:15-CV-176 |

**MEMORANDUM OPINION AND ORDER**

Roger Tristan Johnson, ("Johnson" or "petitioner"), a federal prisoner, has filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. Section 2255, [Doc. 182],[1] The government has responded in opposition, [Doc. 184], petitioner has not replied, and the matter is ripe for disposition. The Court has determined that the files and records in the case conclusively establish that the petitioner is not entitled to relief under § 2255 and, therefore, no evidentiary hearing is necessary. For the reasons set forth herein, petitioner's § 2255 motion lacks merit and will be DENIED and the case (No. 2:15-CV-176) DISMISSED.

**I.    Procedural and Factual History**

Johnson was one of five co-defendants charged in a four-count indictment returned by a federal grand jury on August 14, 2012, [Doc. 3]. He was charged in Count One with conspiracy to distribute and to possess with intent to distribute oxycodone in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(C). [*Id.*] [2] Petitioner entered into a written plea agreement with the government, [Doc. 52], and, on October 22, 2012, entered a plea of guilty on Count One. [Doc. 50]. The plea agreement contained the following stipulated factual basis:

---

[1]  All docket numbers refer to the docket sheet in No. 2:12-CR-85.
[2]  Johnson was not charged in Counts Two-Four.

1

Law enforcement began a financial investigation into the drug trafficking activities of Roger Tristan JOHNSON in 2011. A review of financial documents showed that after large cash deposits were made in JOHNSON's bank account in Tennessee, there were also large withdrawals were also being made the same day from JOHNSON's account in south Florida branch location of the bank.

Two accounts belonging to Johnson that were examined for suspicious activity. From 11/117/12009 to 11/17/2010 there were 73 cash deposits totaling $48,324.78 (Cash constituted 94% of all deposits). This review also revealed 164 debits totaling $46,847.21 (Cash made up 86% of all dollars withdrawn). There were 89 check card purchases for a total of $6,214.91, which made up 13% of all dollars withdrawn.

Further review of the account of Johnson revealed check card purchases at Delta Airlines, La Quinta Inn (West Palm Beach, Florida), Comfort Inn (West Palm Beach, Florida), Enterprise Rent- A-Car, and various gas stations between Tennessee and Florida. Documents provided by Delta Airlines indicate that JOHNSON has flown from the Tri-cities Airport in Johnson City, Tennessee to the Palm Beach International Airport in Palm Beach, Florida. Debits from these accounts do not show typical expenditures, such as bill payments including rent, utilities, and insurance. Analysis of this account does not show any evidence of legitimate income or payroll.

Bank records also show rapid money movement through JOHNSON's account. On September 28, 2011, there were four cash deposits totaling $14,450.00 placed into JOHNSON' s accounts in Tennessee ($600.00, $1,000.00, $3,200.00, and $9,650.00). On this same date, there was a $13,000 cash withdrawal in Florida from JOHNSON's bank account at Palm Beach Lakes. JOHNSON is the only person listed on this account. Records provided by Delta Airlines indicated that JOHNSON purchased a round trip airline ticket for $746.80 on 9/28/2010 (ticket number 0062181414162) and flew from the Tri-Cities Airport in Johnson City, Tennessee to the Palm Beach International Airport in Palm Beach, Florida and returned on the same date.

On April 14, 2010, JOHNSON was stopped by the Hampton County Sheriff's Office going southbound on 1-95 in Yamassee, South Carolina. A "Google Maps" directions search provides that 1-95 through Hampton County, South Carolina is the suggested route between Johnson City, Tennessee and Palm Beach, Florida. A search during this stop located a small amount of marijuana and $5,520.00 cash. JOHNSON did not contest the seizure of the money.

2

On June 8, 2011, another individual was stopped by in Yamassee, South Carolina by the same Deputy that had stopped JOHNSON in April, 2010. This individual was driving a vehicle registered to JOHNSON and a search conducted during the stop revealed 1,200 Roxycodone pills. This individual advised that Roger JOHNSON was the head of a large scale drug trafficking operation responsible for the transportation of approximately 3,000 oxycodone pills per week from Miami, Florida to Johnson City, Tennessee. Further, the individual admitted that he/she was working as a courier for JOHNSON and was attempting to deliver the pills to JOHNSON in Tennessee. Additionally, he/she advised that JOHNSON only distributed to a small select group of people and in quantities of several hundred pills per distributor and that Josh ARNETT, Tommy NICOLAS, and Diane CAMPBELL, were also working for JOHNSON. During a recorded telephone conversations with this person, JOHNSON offered to pay for his/her defense attorney provided that he/she "still has. amnesia." JOHNSON did in fact give this person $1,560.00 for attorney's fees. JOHNSON also provided instructions on what to say to the judge and law enforcement.

November 2, 2011, the same Deputy with the Hampton County Sheriff s Office executed a traffic stop on a black SUV occupied by Diane CAMPBELL and Tommy NICHOLAS traveling southbound on I-95 from Johnson City, Tennessee. Upon approaching the vehicle, the Deputy observed a large amount of cash and several pill bottles in the center console in plain view and during a subsequent consent search of the of the vehicle located approximately $18,040.00 USC. During further questioning of Diane CAMPBELL she stated that she was taking the money down to Miami for another individual to purchase oxycodone pills to take back to Tennessee. When asked by Deputy Patterson who she knew that was trafficking drugs in Johnson City, Tennessee, she gave the last name "JOHNSON. "

June 8, 2012, law enforcement debriefed Diane CAMPBELL who admitted that she had worked as a drug courier for Roger JOHNSON, who she called "TRISTAN." She stated that she made numerous trips, smuggling oxycodone pills from South Florida to East Tennessee for Roger JOHNSON. She also stated that she had worked as a distributor for Roger JOHNSON.

On September 6, 2012, JOHNSON was arrested and Federal Search Warrant was executed at JOHNSON's residence. JOHNSON admitted to trafficking oxycodone and indicated that he was still in contact with his source of supply in Florida. During the search of JOHNSON's residence, law enforcement recovered a loaded .45 caliber handgun.

Through the testimony of several witnesses, including law

3

> enforcement officers, the United States would demonstrate, beyond a reasonable doubt, (1) that beginning from approximately January 1, 2010, and continuing to on or about August 14, 2012, in the Eastern District of Tennessee, and elsewhere, the defendant did knowingly, intentionally, and without authority, conspire with at least one other person to distribute and possess with the intent to distribute the equivalent of at least 4,976 but less than 14,925 (30 milligram) oxycodone pills, a Schedule II controlled substance. In total, the defendant admits responsibility for the distribution of between 149, 280 milligrams of oxycodone, which is the equivalent of a total of 1,000.18 kilograms of marijuana, and 447,750 milligrams of oxycodone, which is the equivalent of a total of 2,999.93 kilograms of marijuana. The parties therefore stipulate to a drug weight calculation of at least 1,000 kg of marijuana but less than 3,000 kg of marijuana.

[Doc. 52 at ¶ 4].

The Court found, among other things, that petitioner's guilty plea was "knowledgeably and voluntarily made," accepted the guilty plea and adjudged petitioner guilty of Count One, scheduled a sentencing hearing, and ordered that a presentence investigation report ("PSR") be prepared. [Doc. 50]. The PSR calculated a base offense level of 32 based on the quantity of oxycodone pills stipulated to in the plea agreement, added a two-level enhancement pursuant to USSG § 2D1.1(b)(1) for possession of a firearm during the offense, and an additional four levels under USSG § 3B1.1(a) for petitioner's organizer/leader role in the conspiracy. [PSR at ¶¶ 25, 26, 28]. After a three level reduction for acceptance of responsibility pursuant to USSG § 3E1.1, [*Id*.at ¶¶ 32, 33], the total offense level was 35. [*Id*.at ¶ 34]. Petitioner's criminal history category was calculated as V, and the resulting advisory guideline range was 235-240 months [Id. at ¶75].[3] Johnson, through counsel, objected to the § 2D1.1(b)(1) enhancement and argued that his criminal history category was overstated. [Doc. 103 at 1, 4]. The Court overruled these objections, adopted the PSR, and sentenced petitioner to 235 months of imprisonment on April

---

[3] The guideline range was capped at the statutory maximum of 20 years, 21U.S.C. § 841(b)(1)(C); otherwise, the range would have been 235-293 months, USSG § 5G1.1(c)(1) [PSR at ¶ 75].

4

23, 2013, [Doc. 108]. Judgment was entered in the case on April 29, 2013, [Doc. 115].

Petitioner appealed the Court's judgment to the Sixth Circuit Court of Appeals. [Doc. 128]. Petitioner's counsel filed an *Anders* brief in the Sixth Circuit pursuant to *Anders v. California*, 386 U.S. 738 (1967) and Rule 101(f)(3), Rules of the Sixth Circuit, concluding that there were no non-frivolous issues for appeal, but identifying potential arguable issues for appeal, [Doc. 164]. The Sixth Circuit held, on March 26, 2014, that Johnson had made a valid waiver of his right to appeal, had no plausible grounds for challenging the validity of his conviction on direct appeal, that the district court had properly applied the § 2D1.1(b)(1) two-level enhancement because "he did not meet his burden of showing that it was clearly improbable that the gun had been connected to the offense," that the sentence imposed was not unreasonable, and that "Johnson [had] no viable sentencing issue to raise on appeal." [*Id.*]. Johnson did not seek review by the United States Supreme Court. The instant § 2255 motion was then filed on June 25, 2015, [Doc. 182].

## II.    Standard of Review

This Court must vacate and set aside petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255. Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief.

5

*Green v. Wingo,* 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson,* 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994). *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying Brecht to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), cert. denied, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), cert. denied, 517 U.S. 1200 (1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

When a § 2255 Petitioner claims he was denied his Sixth Amendment right to effective assistance of counsel, it is noted that an attorney is presumed to have provided effective assistance, and the Petitioner bears the burden of showing that the attorney did not, *Mason v. Mitchell*, 320 F.3d 604, 616-17 (6th Cir. 2003). Petitioner must prove that specific acts or

omissions by his attorney were deficient and that the attorney failed to provide "reasonably effective assistance," *Strickland v. Washington,* 466 U.S. 668, 687 (1987), which is measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). If Petitioner crosses this evidentiary hurdle, he must then show "a reasonable probability that, but for [the attorney's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. In other words, he must show that he was prejudiced by the attorney's deficient representation:

> To succeed on an ineffective assistance claim, a defendant must show that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). [A court's] review of counsel's performance is "highly deferential." Id. at 689, 104 S.Ct. 2052. [The court must] "judge the reasonableness of the time of counsel's conduct." *Id*. at 690, 104 S.Ct. 2052. The defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. To establish "prejudice," a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694, 104 S.Ct. 2052. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. ——, 131 S.Ct. 770, 792, 178 L.Ed.2d 624 (2011). And, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052.

*Docherty v. United States*, 536 Fed. Appx. 547, 551 (6th. Cir. 2013).

### III.   Analysis

Petitioner raises three vaguely worded claims of ineffective assistance of counsel in his motion[4] as follows:

> 1.   Mr. Johnson never received a motion of discovery till after he had plead guilty and the Court accepted his plea.

---

[4] Johnson did not file any memorandum with his motion.

2. Mr. Johnson's lawyer never brought to his attention that it was possible that he could get any enhancements

3. Mr. Johnson would have ask for a bench trial or a different plea agreement if he would have know that he could have received any enhancements. Mr. Johnson plead guilty because he didn't know what would transpire

[Doc. 182 at 4].

### A. Discovery

As set forth above, the burden is on petitioner to plead sufficient facts to set forth a plausible claim for relief. Petitioner falls far short of meeting that burden here. Reading his claim liberally, he apparently claims that he never received some or all of the discovery in his case until after he had entered his guilty plea. He does not identify any specific document or other information provided by the government as discovery, or the nature and content of the discovery at issue, and he does not explain how, or even if, it would have had any possible impact on his decision to plead guilty. And, given the stipulated facts, and petitioner's clear and unequivocal testimony at the change of plea hearing affirming their truth, it is difficult for the Court to even imagine what could possibly have been in the discovery that might have changed the outcome of the proceeding. In any event, the Court is not required to conjure up some hypothetical set of circumstances to support the claim. On the contrary, the burden rests completely with the petitioner.

It is also true, as the government points out, that petitioner testified that he had had ample opportunity to discuss the case with his lawyer before the entry of the plea. He showed no hesitation and he did not equivocate as to his guilt. He also testified that he had read the plea agreement and fully understood its terms and conditions. [Doc. 139 at 14]. The plea agreement itself stated that petitioner had "read the indictment, discussed the charges and

8

possible defenses with defense counsel, and understands the crime[s] charged." [Doc. 52 at 2]. The plea agreement further stated that petitioner was "pleading guilty because defendant is in fact guilty," [*id.*], a statement affirmed by him under oath in testimony at the change of plea hearing. [Doc. 139 at 20]. Petitioner has not shown that counsel's performance, even if the allegation about discovery being provided to him after his guilty plea is true, was deficient, and he clearly cannot show, nor has he even argued, that he suffered any prejudice.

### B. Sentencing Enhancements

As the government notes, petitioner's second and third claims appear to be interrelated. Petitioner claims that his attorney never told him he "could get any enhancements." As noted above, petitioner's base offense level was increased by two levels pursuant to USSG § 2D1.1(b)(1) and four levels pursuant to USSG § 3B1.1(a). Had he known about these enhancements, however, he claims he would have "ask[ed] for a bench trial or a different plea agreement." Petitioner's claim that he was never told about the possibility of guidelines enhancements is largely contradicted by the record and petitioner's sworn testimony. Petitioner's plea agreement clearly set out the maximum possible term of imprisonment, [Doc. 52 at ¶ 1], that petitioner could receive any "lawful term[s] of imprisonment," [*id.*at ¶ 6(a)], that petitioner's sentence in the case would "be determined by the Court after it receives the PSR from the United States Probation Office," [*id.* at¶ 6(c)], and that he understood that "the sentencing determination [would] be based upon the entire scope of [his] criminal conduct, [his] criminal history, and pursuant to the other factors and guidelines set forth in the **Sentencing Guidelines** and the factors set forth in 18 U.S.C. § 3553." [*Id.*]. (emphasis added).

His claim is even more clearly contradicted by petitioner's under oath testimony at the change of plea hearing. Petitioner testified that he was satisfied with the way his attorney

9

Case 2:12-cr-00085-JRG-MCLC   Document 215   Filed 02/02/17   Page 9 of 14   PageID #: 744

had represented him, [Doc. 139 at 14-15], that **no one** had made any promises or threats to induce him to plead guilty, [*id*. at 17-18], that the factual basis set forth in his plea agreement was true, [*id*. at 19], and that he was offering to plead guilty because he was in fact guilty. [*Id*. at 20]. He further testified that he understood the maximum sentence the Court could impose, [*id*. at 21], that he understood that the Court was required to consider the advisory sentencing guidelines before deciding on his sentence, and that he and his attorney had discussed "how these advisory guidelines might apply to his case." [*Id*. at 24]. Petitioner acknowledged that he understood that his advisory guideline range could not be determined until the PSR was prepared and he had an opportunity to object its contents. [*Id*.]. Most importantly of all, petitioner testified that he understood the Court's authority to impose a 20-year non-parolable sentence and, even understanding "that the Court could impose that sentence," he still wanted to plead guilty. [*Id*. at 26]. Counsel confirmed that he had made no representation to petitioner about "what sentence the Court might impose in his case" except for an estimate as to his advisory guideline range. [*Id*.]. Petitioner then verified that he understood that his attorney's "estimate" of the guideline range was not binding on the Court. [*Id*. at 26-27].

As noted above, a petitioner claiming ineffective assistance of counsel must show both deficient performance and prejudice, i.e., "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688. In the guilty plea context, prejudice means that, "but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Even if petitioner could show deficient performance here, he cannot show prejudice, despite his claims that he would have asked for a bench trial or a different plea agreement. "In the Sixth Circuit, a petitioner cannot make [the necessary] showing merely

by telling the court now that []he would have gone to trial then if []he had gotten different advice." *Shimel v. Warren*, 838 F.3d 685, 698 (6th Cir. 2016) (bracketing and quotation marks omitted). Nor can petitioner "base a claim of prejudice on the mere opportunity to make the same decision again with different information." Rather, he "must demonstrate a reasonable likelihood that, had he [received proper advice], he would have, in fact, rejected the plea and proceeded to trial." *Moore v. United States*, -- Fed. App'x --, 2017 WL 129035 (6th Cir. Jan. 13, 2017). As noted by the Sixth Circuit in *Moore*:

> The standard for prejudice in this context is objective. *Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012). Thus, "to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). A rational person would consider not just the advantage of proceeding to trial (the prospect of a possible, though unlikely, lighter sentence), but also the disadvantages.

2017 WL 129035, at * 2.

Here, a decision not to accept the plea agreement offered by the government would have resulted in potential prosecution for other federal charges in the district including a possible charge under 18 U.S.C. § 924(c). The plea agreement allowed the petitioner to limit his potential term of imprisonment to 20 years, while avoiding the possibility of conviction on multiple counts and the possibility of the Court imposing consecutive sentences. As for petitioner's claim that he would have asked for a bench trial, that claim makes no sense. He does not question his guilt, which is the only thing that would have been determined at a bench trial. Rather, he questions the procedure used in the preparation of the PSR and at sentencing and these very same procedures would have been followed regardless of whether he had a bench trial, or a jury trial, or pled guilty. His claim that he would have asked for a different plea agreement makes no more sense. Petitioner has no constitutional right to a plea bargain, *Weatherford v. Bursey*, 429 U.S. 545, 561

(1997), and petitioner has not shown that the government would have offered a different plea agreement and he certainly had no basis upon which to compel it. The United States is clearly not required to acquiesce in petitioner's request for a particular plea agreement. Petitioner simply fails to show any prejudice here.

### C. Voluntary and Knowing Guilty Plea

Construing petitioner's motion liberally, petitioner seems to also be making a claim that his guilty plea was not knowing and voluntary, because he did not know about the possible enhancements under the guidelines. He claims he pled guilty "because he didn't know what would transpire." This claim fails for at least two reasons. First, the record flatly contradicts petitioner's bald assertion that he only pled guilty for his now stated reason; rather, the record of the change of plea hearing as well as the terms of the plea agreement clearly establish that petitioner was pleading guilty because he was in fact guilty. Petitioner's claims which are contradicted by his under oath testimony are insufficient to overcome the presumed veracity of his solemn statements during the Rule 11 colloquy. While "no procedural device for the taking of guilty pleas is so perfect in design and exercise as to warrant a per se rule rendering it 'uniformly invulnerable to subsequent challenge,'" *Blackledge v. Allison*, 431 U.S. 63, 73 (1977) (quoting *Fontaine v. United States*, 411 U.S. 213, 215 (1973), "representations of the [petitioner] . . . constitute a formidable barrier in any subsequent collateral proceeding," *id*. at 74, and his "[s]olemn declarations in open court carry a strong presumption of verity." *Id. See Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) (finding the defendant was bound by statements he made in response to the court's plea colloquy); *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (finding the petitioner bound to plea colloquy responses despite some evidence that contradicted statements made therein).

12

Case 2:12-cr-00085-JRG-MCLC Document 215 Filed 02/02/17 Page 12 of 14 PageID #: 747

Second, the record establishes that the Court scrupulously followed the requirements of Rule 11 in this case in accepting petitioner's guilty plea. It is well settled that where a court scrupulously follows the requirements of Federal Rule of Criminal Procedure 11, not only is the defendant bound by his statements in response to that court's inquiry, but the purpose of Rule 11 is to establish the knowing and voluntary nature of the guilty plea. The record in this case establishes that this Court painstakingly followed those requirements and, as found at the change of plea hearing, the petitioner's plea of guilty was knowing and voluntary. His under oath answers to the Court's questions clearly established that the plea was knowledgeably and voluntarily made.

## IV. Conclusion

For the reasons set forth above, the Court holds that neither petitioner's prosecution in this court nor his sentencing was in violation of the constitution or laws of the United States and he is not entitled to an evidentiary hearing. His motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, [Docs.182], is DENIED.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F. 3d 466 (6th Cir. 2001). The District Court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standard set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595 (2000). *Id.*

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." After reviewing each of Petitioner's claims, the Court finds that reasonable jurists could not conclude that petitioner's claims are adequate to deserve further review. Because petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.

A separate judgment will enter.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE